IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.  Case No. 2:22-cr-00095

JAMES GOULD

**DEFENDANT'S POST-HEARING MEMORANDUM
IN FURTHER SUPPORT OF HIS *BRUEN* MOTION TO DISMISS**

Comes James Gould, through his counsel Senior Litigator AFPD Lex A. Coleman, and based upon positions asserted by the United States during oral argument, further submits the following in support of his *Bruen*-based motion to dismiss:

**A. Housekeeping: Gould has fully served any prospective sentence through his pretrial detention, such that he should now be released.**

Under 18 U.S.C. § 924(a)(2), if convicted of violating Section 922(g)(4) Mr. Gould would be subject to a statutory sentencing range of 0 to 10 years imprisonment. Pursuant to U.S.S.G. § 2K2.1(a)(6), as a prohibited person Gould's starting base offense level would be 14. Because he possessed a single shotgun (and turkey shells) for lawful sporting purposes, and is not otherwise subject to subsections § 2K2.1(a)(1)-(5), his adjusted offense level should be 6. U.S.S.G. § 2K2.1(b)(2).

Gould has prior convictions for DUI, and violating a protective order in the Jackson County Magistrate Court on May 24, 2022, for which he served six months in jail (prior to activation of his federal detainer in this case). *See* PTSR, at 8. He also pled no contest to the misdemeanor possession of a firearm by a prohibited person before the same court in 2019 (for which he was fined). *Id,* at 6. Worst case, therefore, Mr. Gould has 3 criminal history points, *see* U.S.S.G. § 4A1.1(c), placing him in Category II of the Sentencing Table. This would produce an advisory guideline range of 1 to 7 months imprisonment. Gould has been in federal custody since August 23, 2022, or just over seven months.

*See* Dkt. No. 19. Through his pretrial detention, therefore, Gould has already been in custody longer than the top of the Commission's advisory guideline range if he was actually convicted on his Section 922(g)(4) charge.

Defendant already owns at least one residence in Ravenswood, West Virginia. The front door has been repaired, and the power and water are in the process of being restored - such that the residence is now secure and habitable. Gould also has the option of residing with two other family members (not his brothers) who live in proximity to his residence in Jackson County. As a consequence, irrespective of the merits of his case – Mr. Gould should be released on bond until it is resolved.

**B. Gould possessed a 12-guage shotgun in his home for purposes of hunting and self-defense, which is <u>conduct</u> protected by the Second Amendment. Section 922(g)(4), therefore, is presumptively unconstitutional under *Bruen*'s first prong.**

West Virginia allows involuntary commitment based only on a finding of probable cause, which does not itself constitute a conviction or any other state-sponsored sanction for violence or otherwise deliberate wrongful acts. Based solely on such a probable cause finding, Section 922(g)(4) permanently disarms citizens subjected to involuntary commitment orders. Section 922(g)(4) does not disarm citizens temporarily only for the term of commitment or evaluation, or after any purported competency restoration. Section 922(g)(4) does not allow for the return of seized arms after the involuntary commitment is completed or any related mental health episode has passed. It instead disarms citizens and criminalizes future firearm possession permanently – whether the involuntary commitment occurred yesterday or twenty years ago, and whether a given citizen's competency was restored years prior to or practically contemporaneous with any future firearm possession. A Section 922(g)(4) conviction further shifts the affected citizen's future firearm disability into Section 922(g)(1).

Excluding non-law-abiding citizens from "the people" is "precisely the sort of carving out of a subset from 'all Americans' that the *Heller* Court rejected." *United States v. Harrison*, No. CR-22-

00398-PRW, ___ F.Supp.3d ___, 2023 WL 17771138, *4 n. 20 (W.D.Okla. Feb. 3, 2023)(finding Section 922(g)(3) unconstitutional). The government cannot constrict the Second Amendment's "plain text" by doing exactly what *Heller* forbids. *See United States v. Pierre*, No. 1:22-cr-20321-JEM, ECF No. 53 at 17 (S.D. Fla. Nov. 28, 2022) ("[I]t is no surprise that [*Bruen*] used the term 'law-abiding' because that was the factual scenario the Court was considering. Indeed, there would have been no reason for the Court in *Bruen* to address or even consider whether non-law-abiding citizens were part 'of the people.' It did not, and *Bruen*'s references to 'law abiding' do not support the Government's position."); *cf. United States v. McCollum*, 885 F.3d 300, 305 n.5 (4th Cir. 2018)("[Previous cases'] references to a prior *state* conviction are an accident of circumstance: those cases involved state statutes." (emphasis in original)).

In addition to *Rahimi*, other courts have found that the <u>conduct</u> of discrete categories of citizens currently disarmed by the Gun Control Act are still part of "the people," and thereby still subject to Second Amendment protections under *Bruen*'s first prong:

*See e.g. Harrison*, ___ F.Supp.3d ___, 2023 WL 17771138 at *3-*4 & nn. 19-21 (the Second Amendment applies to the conduct of **marijuana users**, finding Section 922(g)(3) unconstitutional); *United States v. Combs*, 5:22-136-DCR, 2023 WL 1466614, *2-*3 (E.D. Ky Feb. 2, 2023)(Second Amendment protections apply to the conduct of **individuals subject to domestic violence protective orders**); *United States v. Hester*, No. 1:22-cr-20333-RNS, ECF No. 39 (S.D. Fla. Jan 27, 2023)(**convicted felons**);   United States v. Barber, 2023 WL 1073667, *5-*6 (E.D. Tex. Jan. 27, 2023)(**same**); *Campiti v. Garland*, 2023 WL 143173, *3 (D. Conn. Jan. 10, 2023)(**same**); *United States v. Hicks*, W:21-CR-00060-ADA, ___ F.Supp.3d ___, 2023 WL 164170 (W.D.Tex. Jan. 9, 2023)(Second Amendment protections apply to **individuals under indictment**); *United States v. Bernard,* No. 22-CR-03 CJW-MAR*,* 2022 WL 17416681 *6-*7 (N.D. Iowa Dec. 5, 2022)(Second Amendment protections apply to conduct of **domestic violence misdemeanants**)*; United States v. Stambaugh*, 5:22-cr-00218-

PRW, \_\_\_ F.Supp.3d \_\_\_, 2022 WL 16936043, \*2 (W.D. Okla. Nov. 14, 2022)(**individuals under indictment** are part of "the people" under the Second Amendment); *United States v. Williams,* 2022 WL 1825005, \*2 (N.D. Ga. Nov. 14, 2022)(**convicted felons** are among "the people"); *United States v. Perez-Gallan*, PE:22-CR-00427-DC, \_\_\_ F.Supp.3d \_\_\_, 2022 WL 16858516, \*3 (W.D. Tex. Nov. 10, 2022)(Second Amendment protects conduct of **individuals subject to domestic violence protective orders**); *United States v. Gray*, No. 22-cr-00247-CNS, 2022 WL 16855969, \*2 (D. Colorado Nov. 10, 2022)(Second Amendment applies to the conduct of **convicted felons**); *United States v. Holden,* 3:22-CR-30 RLM-MGG, \_\_\_ F. Supp.3d \_\_\_, 2022 WL 17103509 (N.D. Ind. Oct 31, 2022)(**individuals under indictment**); *United States v. Carrero*, No.2:22-CR-00030, \_\_\_ F.Supp.3d \_\_\_, 2022 WL 9348792, at \*2 (D. Utah Oct.14, 2022 (**convicted felons** fall within "the people" as contemplated by the First, Second, and Fourth Amendments); *United States v. Coombes*, No. 22-CR-00189, \_\_\_ F.Supp.3d \_\_\_, 2022 WL 4367056 (N.D. Okla. Sept. 21, 2022)(**same**); *United States v. Quiroz*, PE:22-CR-00104-DC, \_\_\_ F.Supp.3d \_\_\_, 2022 WL 4352482, \*3-\*4 (W.D. Tex. Sept. 19, 2022)(Second Amendment protects conduct of **person under felony indictment**); *United States v. Kays*, No.CR-22-40-D, \_\_\_ F.Supp.3d \_\_\_, 2022 WL 3718519, \*2- (W.D. Okla. Aug. 28, 2022)(**same**); *United States v. Jackson*, No. CR-22-59-D, \_\_\_ F.Supp.3d \_\_\_, 2022 WL 3582504, \*1 (W.D. Okla. Aug. 19, 2022)("This Court declines to read into *Bruen* a qualification that Second Amendment rights belong only to individuals who have not violated any laws" – with respect to **domestic violence misdemeanants**.).

These courts' treatment of Second Amendment protections in *Bruen*'s first prong - even those ultimately denying a given defendants' *Bruen* motion to dismiss, is wholly consistent with *Heller*'s construction of "the people" in the First, Fourth, and Second Amendments, *see, Heller* 554 U.S. at 579-

580, as they are with the *Bruen* first prong's emphasis on protected *conduct*.[1] This Court should join these courts, and adopt the same position regarding *Bruen*'s first prong.

As *Pierre*, *supra*, noted - that *Heller*'s lengthy majority opinion mentioned "law-abiding citizen" three times, 554 U.S. at 625-626, 635, does not require a different conclusion. Nor does *McDonald*'s lengthy plurality opinion mentioning "law-abiding" only one time, *see,* 561 U.S. at 790, or *Bruen*'s lengthy majority opinion referring to some combination of "law-abiding citizen" or "law-abiding, responsible citizens" over twelve times. *See, Bruen* 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156. The "law-abiding" nomenclature, at least in *Bruen*'s majority opinion, was the product of assertions made in the parties' pleadings that the two petitioners were law-abiding citizens entitled to firearm carry permits. *Bruen*, 142 S. Ct. at 2124-2125 ("as set forth in the pleadings below, petitioners … are law abiding, adult citizens"). Use of the term throughout *Bruen* did not define or limit any substantive finding, conclusion, or policy statement within the Court's articulation of the Second Amendment standard of review. *See, e.g.,* 142 S.Ct. at 2124-2125; 2152-2156. *Accord*, 142 S. Ct. at 2157 ("Our holding decides nothing about who may lawfully possess a firearm…." Alito, Concurring).[2] Significantly, "virtuous" and "virtuous citizen" are not mentioned in *Heller*, *McDonald*, or *Bruen* at all.

Pre-*Bruen*, in *United States v. Chovan*, 735 F.3d 1127, 1137-1138 (9th Cir. 2013), the Ninth Circuit similarly rejected the government's efforts (repeated here a decade later) to exclude persons subject to Section 922(g)(9) from Second Amendment protections by analogizing the statute to "a 'long line of prohibitions and restrictions on the right to possess firearms by people perceived as dangerous or violent.'" 735 F.3d at 1137. *Chovan* instead expressly held that the Second Amendment applies to

---

[1] Between *Heller* and *Bruen*, the Fourth Circuit previously spoke with a similar emphasis on protected *conduct* applying the first prong of pre-*Bruen* Second Amendment review to Section 922(g)(9). *See, United States v. Staten*, 666 F.3d 154, 159 (4th Cir. 2011).

[2] Otherwise, Justice Alito's concurrence uses "law-abiding" five times, while Justice Kavanaugh's concurrence only uses the term once. *See,* 142 S. Ct. at 2156-2162.

persons covered by § 922(g)(9) - i.e., domestic misdemeanants. *Id.* at 1137-1138. Irrespective of Gould's status, therefore, his conduct is still protected by the Second Amendment for purposes of *Bruen*'s first prong.

As consistently argued by the Government (post-*Bruen* in order to avoid having the carry the burden required by *Bruen*'s second prong), "law-abiding citizens" operates as a holdover from means-end scrutiny vocabulary and reasoning which contradicts *Heller*'s defining of "the people" under the Second Amendment. The idea - that if the founding era tolerated discriminatory disarmament of "dangerous" people based on race, religion, and political viewpoint, it would easily tolerate practically any disarmament of discrete categories of citizens deemed undesirable (under the guise of the artificial "law-abiding" partition) - is not a just a constitutional slippery slope, it's a societal cliff. In fact, this proposition is an incredibly pernicious, and precarious position for any governmental institution to assert (just as it should be for any court to accept).

Lacking any governing textual basis or case law definition, who or what ends up defining "law-abiding" and with it any discrete category of "dangerous" people, becomes very powerful and very capable of arbitrarily depriving citizens of Second Amendment protections. For example, over the past two years the FBI has separately deemed traditional Roman Catholics[3] and American public school parents[4] as "violent extremists" and potential domestic terrorists. Meanwhile, the Biden

---

[3] *See e.g.* Tyler O'Neil, *The FBI's Targeting of "Radical-Traditional Catholics" Bodes Ill*, The Heritage Foundation (Feb. 27, 2023), https://www.heritage.org/religious-liberty/commentary/the-fbis-targeting-radical-traditional-catholics-bodes-ill; Hugh Hewitt, *Opinion: Is the FBI targeting traditional Catholics?* The Washington Post (Feb. 13, 2023), https://www.washingtonpost.com/opinions/2023/02/13/control-fbi-christopher-wray/; Kyle Seraphin, *The FBI Doubles Down on Christians and White Supremacy in 2023*, UncoveredDC.com (Feb. 8, 2023)(article containing actual FBI 8-page threat assessment memo), https://www.uncoverdc.com/2023/02/08/the-fbi-doubles-down-on-christians-and-white-supremacy-in-2023/ (all last viewed April 7, 2023).

[4] *See* U.S. House Judiciary Committee Report, *A "Manufactured" Issue and "Misapplied" Priorities: Subpoenaed Documents Show No Legitimate Basis For The Attorney General's Anti-Parent Memo* (March 21,

Administration has pointed to MAGA Republicans as "true threats to democracy."[5] Similarly, recent mass shootings have reportedly been perpetrated by non-binary and transgender offenders.[6] Using the government's overbroad, overgeneralized "law-abiding citizen" construction of the Second Amendment and *Bruen*'s first prong, Congress could just as easily deem each of these discrete categories of citizens "dangerous" to place them outside Second Amendment protections, and then disarm them like individuals who have been involuntarily committed. Which is why *Bruen*'s first prong looks solely to the <u>conduct</u> of any or all Americans, and under *Bruen*'s second prong - general historical "dangerousness" is impermissibly overbroad. *Bruen* necessarily requires a robust <u>similar</u> (either distinctly or relevantly) historical analogue in order to disarm citizens through modern regulations of protected Second Amendment conduct. Otherwise, under the guise of overgeneralized "dangerousness," citizens' Second Amendment protections would be completely erased. This is an interpretation of the history that the Constitution will not tolerate.

    C.  **The United States has not carried its burden under *Bruen*'s second prong.**

---

2023), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2023-03-21-school-board-documents-interim-report.pdf ; Annie Grayer, *'No legitimate basis' for 2021 DOJ memo on school board threats, House GOP alleges in new report*, CNN.com (March 23, 2023), https://www.cnn.com/2023/03/22/politics/house-gop-report-garland-memo/index.html; Department of Justice, Press Release, *Justice Department Addresses Violent Threats Against School Officials and Teachers* (Oct. 4, 2021), https://www.justice.gov/opa/pr/justice-department-addresses-violent-threats-against-school-officials-and-teachers (all last viewed April 7, 2023).

[5] *See* Emma Kinery, *Biden Warns Trump's extreme MAGA Republicans are 'clear and present danger' to U.S. democracy*, CNBC.com (Sept. 2, 2022), https://www.cnbc.com/2022/09/01/biden-warns-trumps-extreme-maga-republicans-are-a-danger-to-us-democracy.html, Morgan Chalfant, *Binden portrays 'MAGA' Republicans as a threat to democracy*, The Hill (Aug. 25, 2022), https://thehill.com/homenews/administration/3616334-biden-portrays-maga-republicans-as-a-threat-to-democracy/ (all last viewed April 7, 2023). This is not to mention non-violent protesters who did not enter the U.S. Capital on January 6, 2021, who are still being prosecuted by the Department of Justice.

[6] *See e.g.* Noah DeGarmo, *Nashville Suspect Was Not First Trans Shooter*, The Dallas Express (March 31, 2023), https://dallasexpress.com/national/nashville-suspect-was-not-first-trans-shooter/ (last viewed April 7, 2023).

Contrary to the United States' assertions, *Bruen* "constitutes an intervening decision that relieves this Court of its obligation to follow" otherwise binding Circuit precedent. *See e.g. Nutter,* ___ F. Supp.3d ___, 2022 WL 3718518, * 4  (citing *United States, v. Jackson*, No. CR-22-59-D, 2022 WL 3582504, at *2 (W.D. Okla. Aug. 19, 2022)).

As part of its oral argument, the United States maintained (as it has in other cases) that *Bruen* endorsed the constitutionality of shall-issue regimes under the Second Amendnent - which still include background checks, fingerprinting, and other steps to assess the suitability of the applicant possessing a firearm.  The government, however, oversold what Bruen said. *Bruen* did not consider, much less rule on the constitutionality of 43 shall-issue state licensing regimes - because that issue and those statutes were not what was before the Court. *Bruen* instead, in a footnote, merely observed that its invalidation of may-issue regimes did not necessarily render shall-issue regimes unconstitutional. 142 S. Ct. at 2138  n.9  Bruen did not say the government may disarm anyone who is not "law abiding." "The issue of whether a non-law-abiding citizen qualifies for Second Amendment protection was not before the Court [in *Bruen*]," *Goins*, 2022 WL 17836677, at *5.

As further noted during oral argument - there are no founding era firearm regulations which disarmed involuntarily committed citizens at all, much less distinctly similar historical analogues that would satisfy *Bruen*'s second prong.  Under *Bruen* this should be dispositive.  *See Harrison,* 2023 WL 1771138 (W.D. Okla. Feb. 3, 2023)("the United States has not identified a single historical law that is "distinctly similar" to § 922(g)(3) – which *Bruen* suggests is dispositive.").[7]

---

[7] *See also United States v. Lewis*, 2023 WL 187582, at *3 (W.D. Okla. 2023)("the court concludes, upon careful reading of [*Bruen*], that it does articulate two standards for assessment of the Government's proffered historical analogues, depending on whether the challenged regulation addresses a general societal problem that has persisted since the 18th century, or whether the statute addresses unprecedented societal concerns or dramatic technological changes")(cleaned up).

Lacking any such historical analogues, the United States presents a number of overbroad and unrelated historical firearm regulations that are not even "relevantly similar" to 922(g)(4). Presumably aware of this, the government encourages this Court to overgeneralize its own historical inquiry to sustain Section 922(g)(4) as consistent with the purported historical tradition of generally disarming "dangerous" people. The government's efforts should fail.

*Bruen* properly instructs that "[w]hen it comes to interpreting the Constitution, not all history is created equal." 142 S. Ct. at 2136; *Rahimi*, 61 F.4th at 454. The government's so-called historical analogues are simply not *well-established and representative* as *Bruen* requires – even under the more deferential "relevantly similar" standard (which should not apply to Section 922(g)(4)). 142 S. Ct. at 2133.

The United States' extensive reliance on Eighteen Century capital punishment and forfeiture of estates laws is misplaced, where none of the cited historical authorities disarmed citizens. To the extent they were not put to death, such individuals were not permanently prohibited from possessing new firearms. The same was true for the surety laws discussed in the government's brief, which imposed a much less severe burden on possessing firearms than Section 922(g)(4): they only applied to public carry, not possession in the home; they allowed people to continue public carrying if they posted a bond; and the Nineteen Century statutes contained a self-defense exception. *See* 142 S. Ct. at 2148-2149; *Rahimi*, 61 F.2d at 458-461; *United States v. Stanbaugh*, No. CR-22-00218-PRW-2, 2023 WL 172037 (W.D. Okla. Jan. 12, 2023).

In addition to deficiencies with government-cited surety laws – *Rahimi* readily addresses the insufficiency of the government's reliance on the Militia Act of 1662, 61 F.4th at 456; loyalty oath and unacceptable person laws  - i.e. laws disarming slaves, Native Americans (who were not considered citizens at the time and thereby not among "the people") and other persons

considered "dangerous" (i.e. Catholics), *id.* at 456-457; the minority positions of the Pennsylvania and Massachusetts ratifying convictions, *id.* at 457; and laws that prohibited going armed to "terrify" the king's subjects, i*d.* at 457-458. *See also United States v. Perez-Gallan*, ___ F.Supp.3d ___, 2022 WL 16858516 (W.D. Tex. Nov. 10, 2022).

### D. Conclusion

The Second Amendment right to keep and bear arms is not a second class right. *Bruen*, 142 S. Ct. at 2156. Lacking any distinctly similar historical analogues to Section 922(g)(4), the United States is encouraging this Court to do exactly what *Bruen* prohibited with respect to analogical reasoning - because the government believes disarming citizens who have previously been involuntarily committed is good policy. *See* 142 S. Ct. at 2133, n.7. This Court should decline that invitation, and instead directly apply *Bruen*'s distinctly similar standard to dismiss Mr. Gould's indictment.

Date: April 13, 2023.   Respectfully submitted,

**JAMES GOULD**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

<u>s/ **Lex A. Coleman**</u>
Lex A. Coleman, WV Bar No. 10484
Senior Litigator, AFPD
300 Virginia Street, East, Room 3400
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile:  (304) 347-3356
E-mail: lex_coleman@fd.org